F I L E D
Clerk
District Court

AUG 23 2024

for the Northern Mariana Islands
By_____ *J P*
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **Case No. 1:24-cr-00010** |
| | ) | **Case No. 1:24-cr-00011** |
| **Plaintiff,** | ) | **Case No. 1:24-cr-00012** |
| | ) | |
| v. | ) | |
| | ) | **DECISION AND ORDER DENYING** |
| **HONGJIANG YANG,** | ) | **DEFENDANTS' MOTIONS TO** |
| | ) | **DISMISS SUPERSEDING** |
| **Defendant.** | ) | **INDICTMENTS, AND GRANTING** |
| | ) | **MOTIONS TO STRIKE** |
| | ) | **SURPLUSAGE** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MEIFANG WENG,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **XIULAN HUANG,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Defendants Hongjiang Yang ("Yang"), Meifang Weng ("Weng"), and Xiulan Huang ("Huang") (collectively "Defendants") each filed motions to dismiss the Superseding Indictments in each of their respective cases. (Yang Mot. Dismiss, ECF No. 32 *in* 1:24-cr-00010; Weng Mot. Dismiss, ECF No. 30 *in* 1:24-cr-00011; Huang Mot. Dismiss, ECF No. 29 *in* 1:24-cr-00012.)

Additionally, Yang filed a motion to strike the surplusage in the Superseding Indictment (Yang Mot. Strike, ECF No. 34 *in* 1:24-cr-00010), which Weng and Huang joined (ECF No. 31 *in* 1:24-cr-00011; Huang Mot. Dismiss 1 n.1). After oral argument on the motions, the Court took the matters under submission. (Mins., ECF No. 46 *in* 1:24-cr-00012.) For the reasons detailed herein, the Court DENIES Defendants' motions to dismiss, and GRANTS Defendants' motions to strike surplusage in the Superseding Indictments.

## I.   FACTUAL BACKGROUND

A grand jury returned three separate superseding indictments against Yang, Weng, and Huang charging each with two counts: conspiracy and aiding and abetting transportation of illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(I), and (v)(II) ("Count 1"), and conspiracy to defraud the United States in violation of 18 U.S.C. § 371 ("Count 2".) (Yang's Superseding Indictment, ECF No. 26 *in* 1:24-cr-00010; Weng's Superseding Indictment, ECF No. 25 *in* 1:24-cr-00011; Huang's Superseding Indictment, ECF No. 26 *in* 1:24-cr-00012.)[1] The Superseding Indictment alleges that

> [t]he purpose of the transportation was to directly and substantially enable the aliens to further their unlawful presence in the United States, by relocating from Saipan, where low wages, job scarcity, and a high risk of detection made the aliens' continued unlawful presence difficult, to Guam, where higher wages, more job opportunities, and a lower risk of detection made the aliens' continued unlawful presence less difficult.
>
> To complete the scheme's objective, the aliens and other conspirators planned and agreed to use deceitful and dishonest means to obstruct the government's legitimate function of detecting and removing aliens unlawfully present in the United States. . . .
>
> Defendant participated in, and aided and abetted the scheme by, inter alia, knowingly pooling money toward the purchase of the motorboat, which was bought for the purpose of carrying out the scheme.

(Yang's Superseding Indictment 2-3.)

---

[1] The indictments against each Defendant are "are substantially identical[.]" (Huang's Mot. Dismiss 1 n.1.) For convenience, the Court's references to the Superseding Indictment shall be to Yang's Superseding Indictment.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) dictates that an indictment

> must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. . . . A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

To determine the sufficiency of an indictment, "[t]he court must look at the indictment as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (citation omitted).

### A.  Motion to Dismiss Indictment

A defendant may file a motion to dismiss an indictment for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). When considering such motions, "the district court is bound by the four corners of the indictment" and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). "The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing." *Id.* (citation omitted). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "In cases where the indictment 'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (citation omitted). "The test for sufficiency of the indictment is 'not whether it could have been

framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (citation omitted).

## B.  Motion to Strike Surplusage

Pursuant to "the defendant's motion, the court may strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d). The purpose of such a motion "is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (quoting *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir.1983)). In *Terrigno*, the Ninth Circuit affirmed the trial court's denial of a motion to strike surplusage because the facts "while they may be somewhat prejudicial, are all relevant and material to the charge." *Id.* at 373-74; *see accord United States v. Hedgepath*, 434 F.3d 609, 612 (3d Cir. 2006) (holding that "information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand").

## III.    DISCUSSION

Defendants seek dismissal of the Superseding Indictments based on several arguments. They move pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) because they argue that Counts 1 and 2 fail to state a claim upon which relief can be granted; Rule 12(b)(i) because they maintain that Count 1 is duplicitous; and Rule 12(b)(ii) because they contend that Counts 1 and 2 are multiplicious. (Yang Mot. Dismiss 7-8; Weng Mot. Dismiss 6; Huang Mot. Dismiss 2-9.) Additionally, they assert that Counts 1 and 2 are void for vagueness. (*Id.*) Further, Defendants request a bill of particulars pursuant to Federal Rule of Criminal Procedure 7. (Weng Mot. Dismiss 19; Huang Mot. Dismiss 1 n.1.) Finally, Defendants move to strike two phrases in the Superseding Indictments pursuant to Federal Rule of Criminal Procedure 7(d). (Yang Mot. Strike 1.) The Court addresses each of these arguments in turn.

/ / /

### A.  Motion to Dismiss

The Superseding Indictment sufficiently alleges conspiracy and aiding and abetting transportation of illegal aliens in Count 1, and conspiracy to defraud the United States in Count 2.

> i.  *Count 1 – Conspiracy and Aiding and Abetting Transportation of Illegal Aliens*

Since "[a]n indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy" *Buckley*, 689 F.2d at 896 (citations omitted), the Court first outlines the elements for Count 1.

> a.  *Elements for Conspiracy and Aiding and Abetting Transportation of Illegal Aliens*

Section 1324(a)(1)(A)(ii) of Title 8 of the United States Code penalizes

> [a]ny person who — . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law[.]

In order for defendant to be found guilty of transportation of illegal aliens, the Government must prove the following elements: first, that a person was an alien; second, the alien was not lawfully in the United States; third, defendant knew or acted in reckless disregard of the fact that the alien was not lawfully in the United States; and fourth, defendant knowingly transported or moved the alien to help the alien remain in the United States illegally.  Ninth Circuit Model Criminal Jury Instruction § 7.2 (2023). A conviction under § 1324(a)(1)(A)(ii) requires "the defendant's knowledge or reckless disregard of the fact that the alien transported was illegally present in the United States" and the defendant's "inten[t] to further the alien's illegal presence in the United States." *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1022 (9th Cir. 2000) (quoting *United States v. Hernandez-Franco*, 189 F.3d 1151, 1155 (9th Cir. 1999), *overruled in part by United States v. Simon*, 858 F.3d 1289 (9th Cir. 2017). Direct evidence is not required to prove the defendant's intent to further the presence of the illegal alien as "it is permissible for a factfinder to infer that a person intends the natural and probable consequences of his actions[.]" *Hernandez-*

*Guardado*, 228 F.3d at 1023 (citing *United States v. Beltran-Garcia*, 179 F.3d 1200, 1205 n.4 (9th Cir.1999)). For a charge of transportation of illegal aliens, "there must be a direct or substantial relationship between that transportation and its furtherance of the alien's presence in the United States" and this relationship is satisfied where the defendant "provided transportation for one leg of illegal aliens' migration to locations within the United States." *Id.* at 1023-24 (citing *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir. 1977)). "[T]ime, place, distance and overall impact" are factors relevant in determining whether a direct or substantial relationship exists. *Id.* (quoting *Moreno*, 561 F.2d at 1323). In *Moreno*, the Ninth Circuit held that the defendant did not transport illegal aliens in violation of § 1324 because the defendant's transportation of the illegal aliens was "part of the ordinary and required course of his employment as foreman" such that "his transportation of the aliens was only incidentally connected to the furtherance of the violation of law, if at all" and "was too attenuated[.]" *Moreno*, 561 F.2d at 1322. But the Ninth Circuit declined to adopt "an ipso facto exemption for those who transport undocumented aliens for employment or as an incident to employment." *Id.* at 1323.

Section 1324(a)(1)(A)(v)(I) penalizes any conspiracy to commit any of the preceding acts, including § 1324(a)(1)(A)(ii). A conspiracy in violation of § 1324(a)(1)(A)(v)(I) requires:

> [1] an agreement between two or more persons to commit at least one of the following offenses, while knowing [or] in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, namely, . . . transporting or moving the aliens (in violation of 8 U.S.C. § 1324(a)(1)(A)(ii)) . . . and [2] defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

*United States v. Benitez-Augustin*, 61 F. App'x 337, 339-40 (9th Cir. 2003); *see also* Ninth Circuit Model Criminal Jury Instruction § 11.1 (2019). Further, to establish conspiracy under § 1324(a)(1)(A)(v), the government must not only prove an agreement to carry out the substantive offense but also that the defendant "had the intent necessary to commit the underlying offense." *United States v. Torralba-Mendia*, 784 F.3d 652, 663 (9th Cir. 2015) (citations omitted). Thus, for

conspiracy to transport illegal aliens, the defendant must have the intent necessary to commit

transportation of illegal aliens, which requires intent to further the illegal aliens' presence in the

United States.

> For an aiding and abetting conviction, the elements are
>
> (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense.

*United States v. Thum*, 749 F.3d 1143, 1148-49 (9th Cir. 2014) (citations omitted); *see* Ninth

Circuit Model Criminal Jury Instruction § 4.1 (2019).

> *b.   Superseding Indictment Sufficiently Alleges Essential Facts for Count 1*

At the outset, the Court notes that indictments are not required to plead how the offense

was committed. *See United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013) (rejecting

defendant's argument that the indictment failed to allege how the violation was committed because

an indictment "need not specify the theories or evidence upon which the government will rely to

prove those facts." (citation omitted)). "[T]he Constitution does not require '[t]he government [to

allege] its theory of the case or supporting evidence, but only the "essential facts necessary to

apprise a defendant of the crime charged."'" *United States v. Jenkins*, 884 F.2d 433, 438 (9th Cir.

1989) (citations omitted). "One of the purposes of the 'essential facts' requirement is to ensure that

defendant has 'a description of the charges against him in sufficient detail to enable him to prepare

his defense . . . .'" *Id.* at 439 (citations omitted). In *Jenkins*, the Ninth Circuit rejected the

defendant's argument that for his conviction of aiding and assisting in the preparation of false tax

returns, the indictment needed to allege the manner in which he willfully aided, assisted in and

procured the false returns. *Id.* at 439-40. The indictment adequately alleged the date of the offense,

the tax return, the specific loss, and that the defendant willfully aided and assisted such that

"[w]hile it might have been preferable for the government to specify the precise nature of [the

defendant's] misconduct (e.g., selling a "sham" distributorship, suggesting the back-dating of

documents),'" the indictment was specific enough such that he was not denied the opportunity to prepare an adequate defense. *Id.*

Here, the Government need not specify in the Superseding Indictment how Defendants conspired and aided and abetted the transportation of illegal aliens. The Court finds that the Superseding Indictment alleges sufficient facts to apprise each Defendant of the crime charged and to avoid double jeopardy because it identifies the date of the offense (Yang Superseding Indictment ¶¶ 1, 11), Defendants' knowledge or reckless disregard of another alien's illegal presence (*id.*), and Defendant's' intent to further another illegal alien's presence in the United States (*id.* ¶ 3). Nevertheless, the Government provided several facts indicating its theory of the case. The Superseding Indictment states that "*Defendant*, an alien without lawful status under United States law, together and in agreement with at least one of the other aliens, *sought out and hired other residents of Saipan*. . . as co-conspirators for the purpose of providing the eight aliens, and Defendant, *with transportation*[.]" (Yang Superseding Indictment ¶ 2 (emphasis added).) Further, "Defendant participated in, and aided and abetted the scheme by, inter alia, knowingly pooling money toward the purchase of the motorboat, which was bought for the purpose of carrying out the scheme." (*Id.* ¶ 5.) The Court rejects Defendants' arguments that the each of them was merely a passenger and that "knowingly pooling money towards the purchase of the motorboat" used to transport himself is insufficient because the Superseding Indictment specifically alleges the motorboat was purchased "to transport eight aliens, as well as Defendant," and without each Defendant agreeing to contribute sufficient funds, the transportation would not have been possible.

At the hearing, the parties disputed the specific intent in furtherance element - whether the Superseding Indictment alleges that each Defendant intended to further the presence of *another* illegal alien. Defendants maintain that the Superseding Indictment does not allege that each Defendant was more than a mere passenger and intended to further the illegal presence of another alien. (*See* Yang Mot. Dismiss 17-19; Weng Mot. Dismiss 6; Huang Mot. Dismiss 2.) The Superseding Indictment asserts that "[t]he purpose of the transportation was to directly and substantially enable the aliens to further their unlawful presence in the United States[.]"

(Superseding Indictment ¶ 3.) While the Court construes this statement to indicate that Defendants intended to further their own illegal presence, it finds that common sense dictates that this statement *also* indicates that they, as aliens themselves, intended to further the illegal presence of *other* aliens. Moreover, other facts in the Superseding Indictment support this latter intent. (*See* Superseding Indictment ¶ 2 ("Defendant . . . sought out and hired other residence of Saipan . . . as co-conspirators for the purpose of providing *the eight aliens*, *and Defendant,* with transportation from Saipan") (emphasis added).) The Superseding Indictment alleges that each Defendant provided transportation for one leg of another illegal alien's migration to a location within the United States, namely Guam, such that there is a direct or substantial relationship between that transportation and the furtherance of the other illegal alien's presence in the United States. *See Hernandez-Guardado*, 228 F.3d at 1023-24. Therefore, looking at the Superseding Indictment as a whole, including necessarily implied facts, and construing it according to common sense, *Kaplan*, 836 F.3d at 1216, the Court holds that the Superseding Indictment maintains that each Defendant intended to further the unlawful presence of *another* alien. As such, the Court rejects Defendants' arguments and finds that the Superseding Indictment sufficiently alleges conspiracy to transport illegal aliens.

As for the alternative legal theory of aiding and abetting the offense transportation of illegal aliens, Defendants similarly argue that the Superseding Indictment fails to state that Defendants had the requisite intent of the underlying substantive offense, the intent to further another alien's illegal presence in the United States. (*See* Yang Mot. Dismiss 19; Huang Mot. Dismiss 6.) As discussed in the preceding section, the Court finds that the Superseding Indictment alleges facts that demonstrate Defendants had the specific intent to further the illegal presence of other aliens. Thus, the Superseding Indictment alleges the requisite specific intent for aiding and abetting transportation of illegal aliens.

### c. *Duplicitous*

Defendants move to dismiss Count 1 of the Superseding Indictment as duplicitous pursuant to Rule 12(b)(3)(B)(i) because it charges two separate offenses - conspiracy and aiding and abetting transportation of illegal aliens. (Yang Mot. Dismiss 23; Weng Mot. Dismiss 18; Huang Mot. Dismiss 9.) "Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir.1976). "One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense[,]" which "may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense." *Id.* "[C]onspiracy and aiding and abetting are separate offenses" as the former requires proof of an agreement, but the latter does not. *United States v. Arbelaez*, 812 F.2d 530, 533-34 (9th Cir. 1987) (citations omitted). Since Count 1 charges conspiracy and aiding and abetting transportation of illegal aliens, the Court finds that Count 1 is duplicitous.

However, duplicity "is not fatal to an indictment" so long as "(1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007). To cure the duplicity, "the prosecution shall elect the charge within each count on which it will rely at trial" or move for a limiting jury instruction. *United States v. Thomas*, 545 F. Supp. 2d 1018, 1024 (N.D. Cal. 2008) (citing *Ramirez-Martinez*, 273 F.3d at 915), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007). In this case, the Government acknowledges that Count 1 contains two distinct crimes (Gov't Opp'n Yang Mot. Dismiss 5, ECF No. 39) and therefore it is duplicitous, but as the government and Defendant Yang recognize there are options available to the Government to

ensure Defendant's constitutional rights are not violated (Yang Mot. Dismiss 7, 23; Gov't Opp'n

Yang Mot. Dismiss 11-12). Given that these cases are still in their early phases such that the

prosecution can choose which option to remedy the duplicity, the Court denies the motions to

dismiss as to duplicity.[2] *See Thomas,* 545 F.Supp.2d at 1023-34. (finding that two counts are

duplicitous but denying the motion to dismiss the counts).

### d.   Void for Vagueness

Defendant Yang contends that Count 1 is unconstitutionally vague as applied. (Yang Mot.

Dismiss 20). "A statute may be void for vagueness because it does not define the conduct it

prohibits so that an ordinary person would not know what is required of him. Alternatively, a

statute may be void for vagueness because it encourages 'arbitrary and discriminatory

enforcement.'" *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 n.10 (9th Cir. 1996)

(first citing *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972); and then citing *Kolender v.

Lawson,* 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983)). "In an as-applied challenge,

a statute is void for vagueness (and thus unconstitutional under due process) if the statute '(1) does

not define the conduct it prohibits with sufficient definiteness and (2) does not establish minimal

guidelines to govern law enforcement.'" *United States v. Wyatt*, 408 F.3d 1257, 1260 (9th Cir.

2005) (citations omitted).

As Yang recognizes, the Ninth Circuit has already rejected arguments that transportation

of illegal aliens is unconstitutionally vague and has found such claims frivolous. *United States v.

Gonzalez-Hernandez*, 534 F.2d 1353, 1354 (9th Cir. 1976) (per curiam) (citing *United States v.

Sanchez-Mata*, 429 F.2d 1391 (9th Cir. 1970)). Nevertheless, he maintains that as an individual

that contributed money to purchase a boat, he is merely a transportee. (*See* Yang Mot. Dismiss 21-

---

[2] Because the Government has not yet decided which remedy to pursue, the Court need not address Huang's concern
that certain amendments are impermissible if they change the substance of the indictment (Huang Mot. Dismiss 9).

22.) However, this contention defies logic. As detailed above, Defendant Yang contributed money to purchase a boat, without which the transportation would not have been possible for the other illegal aliens like Weng and Huang.[3] A person of common intelligence would understand that the pooling of their own money specifically to purchase a boat for the transportation of an entire group of illegal aliens constitutes transportation of illegal aliens.

When considering whether a statute is arbitrary because it encourages arbitrary and discriminatory enforcement, the Ninth Circuit has found that a scienter or intent requirement "limits the discretion of law enforcement and mitigates any perceived vagueness." *Wyatt*, 408 F.3d at 1261. As discussed above, transportation of illegal aliens, conspiracy of such transportation, and adding and abetting of such transportation all contain intent requirements, which refutes Yang's argument that the statute allows the government to engage in arbitrary and discriminatory enforcement. Therefore, the Court rejects Yang's void for vagueness challenge.

  ii. *Count 2 – Conspiracy to Defraud the United States*

   a. *Elements for Conspiracy to Defraud the United States*

The elements for a conspiracy to defraud the United States in violation of 18 U.S.C. § 371 are "the defendant (1) entered into an agreement (2) to obstruct a lawful government function (3) by deceitful or dishonest means and (4) committed at least one overt act in furtherance of the conspiracy[,]" *United States v. Conti*, 804 F.3d 977, 979-80 (9th Cir. 2015) (first citing *United States v. Caldwell,* 989 F.2d 1056, 1059 (9th Cir. 1993); and then citing *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)), and "the requisite intent to defraud the United States" *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir. 1989). *See* Ninth Circuit Model Criminal Jury Instruction § 11.2 (2024). "'Defrauding' the government under section 371 means obstructing the

---

[3] Moreover, the Superseding Indictment does not only allege that Yang contributed money but that he also sought out and hired residents of Saipan to transport himself *and the other illegal aliens*. (Yang Superseding Indictment ¶ 2.)

operation of any government agency by any 'deceit, craft or trickery, or at least by means that are

dishonest.'" *Caldwell*, 989 F.2d at 1058 (quoting *Hammerschmidt,* 265 U.S. at 188).

>    b.   *Superseding Indictment Sufficiently Alleges Count 2*[4]

The Superseding Indictment sufficiently alleges conspiracy to defraud the United States.

In *United States v. Licciardi*, 30 F.3d 1127, 1128 (9th Cir. 1994), the defendant

> was charged with a conspiracy whose "object" was to "defraud the United States
> and its agency, the BATF, by obstructing, impairing and defeating the lawful
> function of the BATF to assure the integrity and varietal designations of wine
> through examination and analysis of records maintained honestly and accurately and
> free from deceit, trickery, fraud and dishonesty, in violation of Title 18 U.S.C. §
> 371."

Additionally, the superseding indictment alleged a second object – "the use of the mails to obtain

money from Delicato Vineyards (Delicato) and other wine producers by fraud in violation of 18

U.S.C. §§ 1341 and 2 and to conduct financial transactions involving the concealment of the

proceeds of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)." *Id.* Further, the indictment

maintained that "[t]he purpose of the conspiracy was to obtain a higher price for defendant's grapes

than those grapes would otherwise have commanded in the market place by misrepresenting the

variety and appellation of origin of grapes being sold." *Id.* at 1129. To prove a § 371 conspiracy,

the government must prove the specific intent to violate the statute, and the government failed to

provide evidence of such and "[t]hat the incidental effects of [the defendant's] actions would have

been to impair the functions of the BATF does not confer upon him the mens rea of accomplishing

that object." *Id.* at 1131-32.

---

[4] While Yang disputes the constitutionality of using § 371 to cover conduct that only interferes with a government function without cheating the United States out of money or property (Yang Mot. Dismiss 18), he recognizes binding precedent holding otherwise and merely raises this issue "for preservation in case it reaches a higher authority having the power to overrule that theory" (Yang Reply Mot. Dismiss 8, ECF No. 43.) Therefore, the Court simply applies precedent to reject this argument. *See Tuohey*, 867 F.2d at 537 ("recogniz[ing] the continued broad application of section 371 to a case . . . that did not involve a conspiracy to take any money or property from the United States, or to engage in any conduct recognized as criminal by any other statute").

Here, the Superseding Indictment alleges that a purpose of the conspiracy was "providing the eight aliens, and Defendant, with transportation" (Yang Superseding Indictment ¶ 2), and it specifically alleges another objective: defrauding the United States. Paragraph 4 of the Superseding Indictment states: "To complete the scheme's objective, *the aliens and other conspirators planned and agreed* to use deceitful and dishonest means *to obstruct the government's legitimate function of detecting and removing aliens unlawfully present in the United States*." (Yang Superseding Indictment ¶ 4 (emphasis added).) Stated differently, in order to illegally transport the aliens, Defendants needed to and agreed to defraud the United States. Unlike *Liccardi*, which dealt with insufficient evidence, here, accepting the facts plead as true, as the Court must do, the Government does sufficiently plead intent to defraud the United States.

Defendants Yang and Huang also assert that the Superseding Indictment deficiently alleges deceitful and dishonest conduct. (Yang Mot. Dismiss 26; Huang Mot. Dismiss 8.) "'Defrauding' the government under section 371 means obstructing the operation of any government agency by any 'deceit, craft or trickery, or at least by means that are dishonest.'" *Caldwell*, 989 F.2d at 1058 (quoting *Hammerschmidt*, 265 U.S. at 188). Here, the Superseding Indictment specifies that "the aliens and other conspirators planned and agreed to use deceitful and dishonest means" and listed seven different means, including travelling by sea and using remote and unmonitored ports to avoid detection at government inspection points, and formulating a false cover story. (Yang Superseding Indictment ¶ 4.) Defendants fail to cite to caselaw even hinting that these means do not constitute deceitful and dishonest conduct, and premise their arguments on strained interpretations. The Court finds that when read in totality, the means listed in the Superseding Indictment constitute deceit, craft or trickery, or dishonest means to obstruct the government's function of detecting and removing aliens unlawfully in the United States.

In sum, the Court concludes that Count 2 sufficiently alleges all the elements for conspiracy to defraud the United States.

### c.   Void for Vagueness

Yang contends that § 371 is void for vagueness as applied because a reasonable person "would have no idea that the word 'defraud' encompasses conduct that obstructs government functions by dishonest means without involving any money or traditional property rights, let alone that travelling from the CNMI to Guam in a boat at night without announcing the trip to the government" constitutes defrauding the United States. (Yang Mot. Dismiss 25.) As referenced above, it is well-established that a § 371 conspiracy does not need to involve money or property. *See Tuohey*, 867 F.2d at 537. Conspiracy to defraud the United States encompasses "*any* conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any government agency." *United States v. Little*, 753 F.2d 1420, 1443 (9th Cir. 1984) (citing *Dennis v. United States*, 384 U.S. 855, 861 (1966)). The Ninth Circuit rejected a void for vagueness as applied challenge because the defendants had fair notice that "§ 371 clearly applies to conspiracies to impede, impair, obstruct, or defeat the lawful function of the Department of Treasury in the collection of income taxes" and "[t]he mens rea requirement of § 371 eliminates any objection that the statute punishes the accused for an offense of which he or she was unaware." *Id.* (citations omitted). Here, § 371 clearly covers the instant conduct of "secretly attempting to enter the United States by boat at night to avoid examination or inspection by immigration officers" as the Ninth Circuit affirmed a § 371 conviction based on similar facts from this same court over ten years ago. *United States v. Pingping Zhang*, 454 Fed. App'x 591, 593-95 (9th Cir. 2011) (Smith, M., concurring).[5] Therefore, Defendants had fair notice that their conduct would be criminalized by §

_____

[5] The Court is aware of the Defendants' concern regarding the Kafkaesque scenario of the government charging a § 371 felony instead of a misdemeanor under 8 U.S.C. § 1325(a) for the same conduct. Similar to Judge Smith's

371. *Cf. Little*, 753 F.2d at 1443. Thus, the Court rejects Yang's void for vagueness argument as applied to the § 371 offense.

### d.   Bill of Particulars

Weng and Huang request a bill of particulars as to Count 2 to identify "which government agency or agencies [Defendants] allegedly conspired to obstruct, or what duty they owed the United States and the statute or regulation that imposes such duty." (Weng Mot. Dismiss 19; Huang Mot. Dismiss 1 n.1.) Rule 7(f) provides that "[t]he court may direct the government to file a bill of particulars." The decision on a motion for a bill of particulars is within the discretion of the trial court. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (citation omitted).

> The bill of particulars has three functions: "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes."

*Id.* (citations omitted). As discussed above, the § 371 count is not vague and sufficiently informs Defendants of the charges against them. Moreover, this request is akin to a request for discovery, which is not the purpose of a bill of particulars since "[f]ull discovery will obviate the need for a bill of particulars." *Id.* Therefore, the Court exercises its discretion and denies the request for a bill of particulars.

### e.   Multiplicity

Defendants Yang and Huang argue that the conspiracy charges in Count 1 and 2 are multiplicious. (Yang Mot. Dismiss 28; Huang Mot. Dismiss 9.) "An indictment is multiplicitous when it charges multiple counts for a single offense, producing two penalties for one crime and thus raising double jeopardy questions." *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir.

---

concurrence, the undersigned is compelled to apply Ninth Circuit precedent. *Pingping Zhang*, 454 Fed. App'x at 593 (Smith, M., concurring).

2005) (citation omitted). "The starting point for determining if a single act constitutes two offenses, which is within the power of Congress to ordain, is whether each requires proof of a fact that the other does not, the test of statutory construction set out in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932)." *United States v. Walker*, 653 F.2d 1343, 1351 (9th Cir. 1981). Conspiracy to transport illegal aliens in violation of § 1324(a)(1)(A)(v)(I) does not require an overt act. *See Benitez-Augustin*, 61 F. App'x at 339-40; *see also* Ninth Circuit Model Criminal Jury Instruction § 11.1 (2019). Conversely, § 371 conspiracy does require an overt act. *Conti*, 804 F.3d at 979-80. Therefore, the two charged conspiracies are not multiplicious.

### B.  Motion to Strike

Defendants seek to strike two phrases in the Superseding Indictment: "included but were not limited to" and "*inter alia*" as they assert the phrases are irrelevant and immaterial. (Yang Mot. Strike 2.) The Superseding Indictment states: "To complete the scheme's objective, the aliens and other conspirators planned and agreed to use deceitful and dishonest means to obstruct the government's legitimate function of detecting and removing aliens unlawfully present in the United States. Such *means included but were not limited to*:  . . ." and that "Defendant participated in, and aided and abetted the scheme by, *inter alia*, knowingly pooling money toward the purchase of the motorboat, which was bought for the purpose of carrying out the scheme." (Yang Superseding Indictment ¶¶ 4-5 (emphasis added).) Both paragraphs are listed under a heading entitled "Purpose and Means of the Scheme[.]" They are also incorporated by reference under the "Count One: Conspiracy and Aiding and Abetting Transportation of Illegal Aliens" and "Count Two: Conspiracy to Defraud the United States[.]" (*Id.* ¶¶ 10, 12.)

To determine whether broad phrases such as "among the means," "and other activities," and "among others" should be stricken, courts look to whether such phrases are contained in a charging paragraph or a means paragraph. *United States v. DePalma*, 461 F. Supp. 778, 798-99

(S.D.N.Y. 1978); *United States v. Yagman*, No. CR 06-227(A) SVW, 2007 WL 9724388, at \*26-27 (C.D. Cal. May 3, 2007).

> A charging paragraph in the Indictment sets forth the gravamen of the offense as charged by the grand jury. As such, a charging paragraph must delineate the matter upon which the grand jury based its accusations against the defendants. Consequently, a broad allegation such as "and other activities" when contained therein adds nothing to the charges, gives the defendant no further information with respect to them, and creates the danger that the prosecutor at trial may impermissibly enlarge the charges contained in the Indictment returned by the grand jury. The means paragraph, however, goes to the matter of proof to sustain the charges. Accordingly, the phrase "and other activities" or "among the means" when contained therein can be equated to allegations of overt acts in a conspiracy charge where the Government is not required to set forth all the acts relied upon to effectuate the conspiracy.

*DePalma*, 461 F. Supp. at 798-99. Thus, broad phrases in a charging paragraph should be stricken while broad phrases in a means paragraph should not be struck as surplusage. *See id.* A court's striking of such language does not foreclose the government from presenting evidence which may be relevant to the charges at trial. *United States v. Pope*, 189 F. Supp. 12, 26 (S.D.N.Y. 1960); *United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985).

For the first time in his reply brief, Defendant Yang raised the distinction between charging and means paragraph, even though in his reply, he describes *DePalma* as the leading case on this issue. (*Compare* Yang Mot. Strike, *with* Yang Reply Mot. Strike 2, ECF No. 42.) While a "district court need not consider arguments raised for the first time in a reply brief[,]" the Court exercises its discretion to consider it. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted). In its opposition to Yang's Motion to Strike, the Government states that it is "amenable to . . . striking 'but were not limited to', or even the second part of paragraph 5 after 'abetted the scheme', but on the understanding that [it] may introduce evidence of acts of deceit and deception, and means of participation, beyond that described in the Superseding Indictment." (Gov't Opp'n Yang Mot. Strike 2, ECF No. 41.) Striking such language "in no way forecloses the government from presenting any proof relevant to the charges at trial." *DeFabritus*, 605 F. Supp. at 1547. Based on

the Government's amenability and caselaw, the Court strikes "but were not limited to" in paragraph 4 and "*inter alia*" in paragraph 5 of the Superseding Indictments. Therefore, Yang's motion to strike is GRANTED.

Alternatively, the Court concludes that the phrases "included but were not limited to" and "*inter alia*" are contained in the means paragraphs. First, they are the heading of "Purpose and Means of the Scheme[.]" "Moreover, they do not infer that the defendant is accused of crimes not charged in the [Superseding] Indictment." *United States v. Washington*, 947 F. Supp. 87, 90 (S.D.N.Y. 1996); *cf. United States v. Brighton Bldg. & Maint. Co.*, 435 F. Supp. 222, 226, 230 (N.D. Ill. 1977), *aff'd*, 598 F.2d 1101 (7th Cir. 1979) (striking language detailing that defendants' conspiracy related to "at least two specific F.A.I. projects" in an indictment arising "out of an alleged bid-rigging scheme involving highway construction" on a federal interstate because it "serve[d] no useful purpose and allows the jury to draw the inference that the defendant is accused of crimes not charged in the indictment"). These phrases detail the means in which Defendant conspired to defraud the United States and aided and abetted the transportation of illegal aliens.

## IV.    CONCLUSION

Based on the foregoing, Defendants' motions to dismiss, which include the request for a bill of particulars, are DENIED. Further, the Court GRANTS Defendants' motions to strike as surplusage and strikes the phrases "but were not limited to" in paragraph 4 and "*inter alia*" in paragraph 5 of the Superseding Indictments.

IT IS SO ORDERED this 23rd day of August 2024.

_____
RAMONA V. MANGLONA
Chief Judge